IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERNANDEZ BAILEY )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>MARCUS HARDY, Warden[1] )<br>)<br>Respondent. )<br>) | Case No. 09 C 691<br><br>The Honorable William J. Hibbler |

MEMORANDUM OPINION AND ORDER

Following a 1989 bench trial, Hernandez Bailey was convicted of first-degree murder and two counts of attempted murder. Bailey has exhausted his rights to direct appeal and post-conviction relief in the state court and now seeks a writ of *habeas corpus* pursuant to 22 U.S.C. § 2254. For the reasons stated herein, the Court DENIES Bailey's petition.

I. Factual Background[2]

In May 1987, an unknown assailant threw a brick at Anthony Jackson and Lenora Camphor as they argued outside a Chicago Housing Authority Building. Jackson, Brandon Abrams, and Anthony Camphor (Lenora's nephew) then chased the brick thrower as he fled. Unfortunately,

---

[1] Marcus Hardy is the Warden at the Stateville Correctional Center, where Bailey is incarcerated, and is thus the proper respondent in this *habeas* action. *See* Rule 2(a) of the Rules Governing *Habeas Corpus* cases under 28 U.S.C. § 2254. This court hereby substitutes Marcus Hardy as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] The state court's factual findings are "presumed to be correct" on federal *habeas corpus* review, and this presumption may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

1

Jackson, Abrams, and Camphor encountered rival gang members. Someone called for them to be shot, and shots indeed were fired. While Abrams and Camphor were wounded, Jackson was killed in the gunfire. The state believed that Darryl Moten was the shooter and that Bailey was liable under a theory of accountability because he had directed Moten to shoot.

During the bench trial of the co-defendants, the state relied principally on the testimony of Abrams and two bystanders who witnessed the shooting, Torrence Adams and Michael Thompson. Abrams testified that as he chase the brick thrower, he observed approximately ten people standing around, including Adams and Thompson. Abrams further testified that he asked where the brick thrower had fled to and someone replied "there they go." Around the same time, according to Abrams, someone else said "shoot them marks," after which several gunshots were fired from the group. Abrams admitted, however, that he was unable to identify any specific shooter or the person who stated "shoot them marks."

Adams, however, provided more detail. He stated that he and Thompson were returning from a liquor store and observed four people associated with the Gangster Disciples street gang, including Bailey and his co-defendant Moten.[3] Adams corroborated Abrams's account of the events, stating that several men ran into the area inquiring about the person who had thrown the bricks, followed by someone directing shots to be fired. Unlike Abrams, Adams identified Moten and Bailey as the shooter and accomplice. Adams testified that Moten fired the gun and that Bailey had told him to "shoot."

On cross-examination, Adams equivocated, stating that he was not certain that Bailey had been the person to tell Moten to "shoot." It also came out on cross-examination that Adams had told

---

[3]Abrams had previously admitted that he and Camphor were members of the Vice Lords gang.

a detective that Moten had been the shooter and Bailey had told him to shoot, but that Adams could not remember which detective he provided this information to.

Finally, Thompson testified and corroborated Adams's identifications. Thompson initially was hesitant to identify Moten as the shooter and Bailey as the person who told him to shoot. The state then sought to have Thompson declared a hostile witness. During this process it became clear that both Thompson and Adams had previously testified before a grand jury. Neither the prosecutor nor defense counsel had been aware of that testimony and defense counsel had not obtained the transcript of their testimony, though it was then provided. The state trial court declared Thompson to be a hostile witness and allowed the prosecution to impeach him with his prior statements.

After Thompson retook the stand, he admitted that he had previously identified Moten as the shooter and Bailey as person encouraging Moten to shoot several different times. Thompson admitted that he had told the police that he heard Bailey say "shoot him, shoot him" and that he had seen Moten pull a gun from his waistband. He further admitted that he testified to the same identifications before a grand jury. In addition, he admitted that he had identified Bailey in a lineup as a person who had shot at him. Finally, Thompson admitted that when preparing for his testimony he had told the prosecutor that Bailey had told Moten to shoot.

When defense counsel examined Thompson, he attempted to undo the damaging identifications made in his prior statements by explaining that he was motivated to make a false identification of Bailey. Thompson explained first he had concocted the inculpatory statements because he didn't like Bailey. Thompson explained further that at the time he made the inculpatory statements he needed a place to live and prosecutors promised him financial assistance pursuant to a witness protection program for his testimony.

Bailey presented only stipulations in his defense. First, the parties stipulated to the potential

testimony of one of the investigating detectives. Specifically, the parties agreed that a detective who interviewed Adams would have testified that Adams never told him that Bailey was present at the scene of the shooting or that Bailey told Moten to shoot, thus appearing to contradict Adams's in court testimony and identification of Bailey. Second, the parties stipulated that during his grand jury testimony Adams did not mention that Bailey was with Moten at the time of the shooting.

The state trial court found Bailey guilty based on Adams's and Thompson's testimony. It further found that the stipulations offered by Bailey did not impeach Adams's testimony because they lacked any context. Bailey raised several arguments on appeal. Among other things, Bailey argued that the evidence was insufficient to support his conviction, the trial court erred in refusing to consider the impeachment evidence of Adams's grand jury testimony (largely because trial counsel was ineffective in failing to obtain the grand jury testimony prior to trial), and that the trial court erred in giving substantive weight to a prior inconsistent statement made by Thompson to the prosecutor during trial preparation. The state appellate court affirmed Bailey's conviction and the Illinois Supreme Court denied his petition for leave to appeal.

Bailey then filed a state petition for post-conviction relief. In the petition, Bailey argued that his trial counsel was ineffective because he failed to file a motion for written discovery, which would have supplied him with Adams's grand jury testimony for impeachment purposes. Following a hearing, the post-conviction trial court granted Bailey's petition and ordered a new trial. The state appealed, and the appellate court reversed, holding that the delay in obtaining the grand jury testimony did not prejudice Bailey. The Illinois Supreme Court denied leave to appeal.

Bailey then timely filed this *habeas corpus* petition. He raises four claims, arguing that: (1) insufficient evidence supports his conviction; (2) the state court erred in giving substantive weight to Thompson's prior inconsistent statements; (3) the state court erred in not giving proper weight for

4

purposes of impeachment to Adams's grand jury testimony; and (4) trial counsel was ineffective in failing to procure and use Adams's grand jury testimony to impeach his trial testimony.

## II. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a federal court cannot grant *habeas corpus* relief on a claim adjudicated on the merits unless the state court decision unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 22 U.S.C. § 2254(d); *McCarthy v. Pollard*, 656 F.3d 478, 483 (7th Cir. 2011). Under the "contrary to" clause, a federal court may issue a writ of *habeas corpus* if the state court applies a rule of law that is different from the governing law as set forth by the Supreme Court or decides a case differently that the Supreme Court has on a materially indistinguishable set of facts. *McCarthy*, 656 F.3d at 483. Under the "unreasonable application" clause, *habeas* relief is appropriate if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the case. *Id.* The state court's application of the principle must be more than simply wrong. *Id.* Rather, under this standard, the state court's application must be objectively unreasonable. *Id.* To determine whether a state court's decision is unreasonable, a court first determines what arguments or theories could support a state court's decision and then asks whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the Supreme Court precedent. *Cullen v. Pinholster*, — U.S. —, —, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557 (2011).

## III. Analysis

The majority of Bailey's claims require little discussion. In his reply, he addresses only his

5

ineffective assistance of counsel claim and appears to have abandoned his other three claims. And for good reason. Bailey's claims that the state court erred in giving substantive weight to Thompson's prior inconsistent statements and in not giving proper weight to Adams's grand jury testimony for impeachment purposes are not cognizable *habeas* claims. Errors of state law are not cognizable on *habeas* review. *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2009). Rather, a court may review only whether a petitioner's conviction or sentence violates a petitioner's federal rights. *Id.*

Although Bailey invokes his due process rights in his argument that the state trial court erred in giving substantive weight to Thompson's prior inconsistent statements, the body of his argument reveals that he complains only of the state's application of 725 ILCS 5/115.10(c)(1)(B). His petition draws no connection between the alleged evidentiary error and any constitutional right. *See Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004) (holding that state court post-conviction petition must draw connection between evidentiary ruling and due process right to preserve a cognizable *habeas* claim). He makes no argument that the statute itself or a mechanistic application of it amounts to a violation of due process. *Rice v. Bowen*, 264 F.3d 698, 702 (7th Cir. 2001) (noting that such an argument may state a cognizable *habeas* claim). Similarly, Bailey's claim that the state trial court did not give proper weight to the impeachment value of Adams's grand jury testimony does not state a cognizable *habeas* claim. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (holding that courts may not evaluate credibility determinations on collateral review).

While cognizable, Bailey's insufficiency of the evidence claim lacks merit. A court examining the sufficiency of the evidence underlying a defendant's conviction must construe the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact

could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed. 560 (1979). The state appellate court identified this legal principle and reasonably applied it. Among other things, Thompson stated to the police, the grand jury, and the prosecutor that Bailey told Moten to shoot the victims. That evidence itself demonstrates that Bailey actively took part in the crime by urging Moten to shoot, that he did so prior to the shooting, and that he had the requisite intent to promote the shooting of the victims. *Jackson* makes clear that the trier of fact bears the responsibility to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the basic facts to ultimate facts. 443 U.S. at 319. The state court did just that, and Bailey's argument that the state appellate court unreasonably applied *Jackson* lacks merit.

That leaves only Bailey's ineffective assistance of counsel argument. The Supreme Court set forth the standard for ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's allegedly deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 688, 694. In order to demonstrate that a defendant was prejudiced by ineffective counsel, it is not sufficient to show that counsel erred or even that the error had "some conceivable effect on the outcome." *Strickland*, 466 U.S. at 693. Rather, a defendant must show that there is a reasonable probability that but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The state court cited and recognized the standard set forth in *Strickland*. It presumed that defense counsel had been deficient in failing to file a pre-trial written motion for discovery from

7

which he would have obtained Adams's grand jury testimony and examined whether that failure prejudiced Bailey and asked whether that failure prejudiced Bailey.

The state court first examined the context in which the purported impeachment testimony occurred. During his grand jury testimony, Adams was asked whether Moten was alone or with other people. Adams responded that Moten was "with three more other guys." Immediately thereafter, the questioning returned to Adams's recollection regarding Moten and Adams was never questioned during his grand jury testimony about the identity of the three men that were with Moten. The state court observed that it was not unnatural for Adams to fail to mention Bailey when asked if Moten was alone or with other people. In fact, the state court observed that Adams knew Thompson by name and did not mention that Thompson was with Moten. The state court noted that under Illinois law because the failure to mention Bailey was not "unnatural" the trial judge would have been within his discretion to find the impeaching testimony inadmissible. Thus, the post-conviction appellate court reasoned that because he obtained a stipulation that he might otherwise not have obtained Bailey conceivably benefitted from counsel's failure to obtain the grand jury.

The state court then examined whether any cross examination of Adams using his grand jury testimony would have added any value to his defense beyond the stipulation, in essence weighing the probative value of the proffered impeachment testimony. The state court noted that the trial court had given little weight to the stipulation because it lacked context. It then examined the context provided by Adams's grand jury testimony and concluded that it did not add any value to the effort to impeach him because Adams was never asked during his grand jury testimony any relevant questions that would have led him to identify Bailey. Consequently, the state court concluded that the value of any live impeachment of Adams was minimal or non-existent, and counsel's failure to obtain it would not lead to a reasonable probability of a different outcome.

8

Bailey argues that the state court asks the wrong question in applying *Strickland's* prejudice prong. In short, Bailey argues that the state court required him to demonstrate a *definite* possibility that the result of the proceedings would have been different. Although Bailey couches his argument as one that the state court unreasonably applied *Strickland*, in actuality, he is suggesting that the state court applied a standard other than what the Supreme Court announced in *Strickland*. In other words, he argues that although the state court cited to *Strickland* it applied a rule that was contrary to the rule set forth in *Strickland*.

Bailey first attacks the state court's analysis of the context in which Adams's grand jury testimony occurred. Bailey argues that the state court asked whether the result could have been the same if trial counsel had obtained Adams's grand jury testimony, thus applying a rule more like that applied in evaluating the sufficiency of the evidence and not one to determine whether counsel's errors prejudiced Bailey. The state court, however, did not pin its analysis entirely on the fact that the trial court could have declined to allow the impeachment at all. Rather, it merely posited that as one possible outcome had counsel attempted to impeach Adams using his grand jury testimony. It noted that given that possible outcome, Adams conceivably could have benefitted from counsel's error by obtaining a stipulation that he otherwise would not have obtained. The state court went on to explore the potential benefit Bailey could have obtained had the trial court allowed Adams's grand jury testimony to be used. If anything, the state court's explanation that the trial court could have prohibited the impeachment is dicta.

Bailey also attacks the state court's analysis of the value of the impeachment testimony. Again, Bailey argues that the state court asked only whether the result would have been different had trial counsel impeached Adams with his grand jury testimony and not whether there was a probability that the result would have been different. In other words, Bailey argues the state court required him

9

to show that the result of the proceedings definitively would have been different. Thus, Bailey suggests the state court applied a standard contrary to the standard announced in *Strickland*.

Bailey suggests that another fact-finder might have found it significant that Adams failed to identify Bailey when asked whether Moten was alone or with other people. Bailey offers no real logical reason for this conclusion. Bailey has offered no reasoned argument that would suggest that a reasonable fact-finder might have viewed Adams's grand jury testimony to add any value to his defense beyond that which the stipulation offered. He simply states that it is conceivably so.

*Strickland* does not require, however, a court to consider every conceivable effect upon the outcome of a trial. *Strickland*, 466 U.S. at 693. Rather, it requires a court to consider reasonably possible effects upon the outcome of a trial. *Id.* at 694. When the state court's reasoning is examined, it is clear that it did so.

The state court recognized that the prosecution stipulated that Adams did not identify Bailey during his grand jury testimony, which indirectly by omission impeaches his trial testimony. However, if the exact questions and answers from Adams's grand jury testimony were presented to the fact finder, the fact finder gains only information that makes that omission less relevant. Namely, it alerts the fact finder that Adams was never asked whether Bailey was one of the people with Moten. As the state court observed, the context makes the impeaching testimony less relevant and thus not reasonably probable that it could have affected on the outcome of the trial. Bailey fails entirely to provide any reasoned explanation that would dictate another conclusion under *Strickland*.

The Court DENIES Bailey's petition for a writ of *habeas corpus*.

An appeal from a denial of a petition for a writ of *habeas corpus* can betaken only if a petitioner makes a substantial showing of the denial of a constitutional claim. 28 U.S.C. § 2253(c)(2). To meet this standard, a petitioner must show that reasonable jurists could debate

whether the petition should have been resolved in a different manner or the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockerell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Bailey presents an argument only on his ineffective assistance of counsel claim. Largely, however, his argument is based on an incorrect premise — that *Strickland* requires only that he show that counsel's error have a conceivable effect on the outcome of the proceedings. As noted above, *Strickland* requires that he demonstrate that counsel's error creates a reasonable probability that the outcome of the proceedings would have been different. Bailey presented no reasoned argument before either the state court or this Court that having Adams's would have created a reasonable probability of a different outcome. Indeed, Bailey does not even make a reasoned argument that a different outcome was conceivable, let alone reasonable. The Court therefore declines to issue a certificate of appealability.

IT IS SO ORDERED.

12/15/11
Dated

Hon. William J. Hibbler
U.S. District Court